IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:04CV75-03-MU

| | |
|---|---|
| LEON M. AGER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) **O R D E R** |
| | ) |
| CORDELIA CLARK, | ) |
| | ) |
| Respondents. | ) |

**THIS MATTER** is before the Court upon Petitioner Leon Ager's (hereinafter "Petitioner") Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Document No. 1.) Also before the Court is the State's Motion for Summary Judgment (Document No. 4), Petitioner's response in opposition (Document No. 10) and the State's reply brief (Document No. 11.)

## I. FACTUAL AND PROCEDURAL BACKGROUND

The North Carolina Court of Appeals succinctly summarized the facts from Petitioner's case as follows;

> On or about 4 March 1996, defendant pled guilty to the first-degree murder of his fiancee, Vanessa Haynes. The State's summary of evidence during the entry of plea, made without any objection from defendant, tended to show the following: On the evening of 30 December 1995, Haynes was driving her eleven-year-old son to the child's grandmother's home, when she and defendant, who occupied the back seat, began to argue. When Haynes pulled onto the shoulder of the road and instructed defendant to get out of the vehicle, defendant shot Haynes at point-blank range with a .22 caliber pistol. Haynes died immediately. Defendant subsequently told a responding officer of the Shelby Police Department that he shot Haynes because she was always "disrespecting him" and "going out to get drunk."

1

This Court's review of the record reveals that on March 4, 1996 Petitioner pled guilty to the first-degree murder of his girlfriend. On November 26, 1997 Petitioner filed a motion to withdraw his guilty plea and after an evidentiary hearing on January 16, 1998, Judge Ronald K. Payne entered detailed findings of fact and conclusions of law and denied Petitioner's motion to withdraw his guilty plea on April 22, 1998. On July 1, 1999 Petitioner filed a motion for appropriate relief ("MAR") which Judge Forrest D. Bridges construed as a motion to reconsider the motion to withdraw the guilty plea. After conducting another evidentiary hearing on October 7-8, 1999, Judge Bridges entered detailed findings of fact and conclusions of law and denied Petitioner's motion on October 15, 1999. On November 18, 1999, Judge Robert P. Johnston conducted a capital sentencing hearing and Petitioner was sentenced to life imprisonment without parole. On September 3, 2002 the North Carolina Court of Appeals issued a published opinion affirming Petitioner conviction and sentence. (Judge Biggs dissenting). On May 2, 2003 the Supreme Court of North Carolina affirmed the majority opinion of the North Carolina Court of Appeals upholding Petitioner's conviction and sentence. State v. Ager, 152 N.C. App. 577, 568 (200), aff'd, 357 N.C. 154 (2003). In the meantime, on December 19, 2002 the Supreme Court of North Carolina dismissed Petitioner's notice of appeal for lack of a substantial constitutional question and denied discretionary review. Petitioner dated his federal habeas petition on April 25, 2004 and filed it in this Court on May 3, 2004. Petitioner contends that his alleged incompetence rendered both his guilty plea and his waiver of constitutional rights involuntary and unconstitutional and that he received ineffective assistance of counsel.

## II. Standard of Review

Generally speaking, the standard of review to be applied by the Court to habeas cases is "quite deferential to the rulings of the state court." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir.

2001). Indeed, as the Burch Court noted:

> [p]ursuant to the standards promulgated in 28 U.S.C. § 2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication; (1) "resulted in a decision that was contrary to, or involved as unreasonable application of, clearly established Federal laws, as determined by the Supreme Court of the United States" . . . ; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . ."

Id. (Internal citations omitted).

The Supreme Court has explained that a state court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000), quoted in Burch. An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this Court may not issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. Id.

Finally, the applicable standard of review is to be applied to "all claims 'adjudicated on the merits," that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.2d 445, 455 (4th Cir. 1999).

### III. ANALYSIS

#### I. The Guilty Plea

First, Petitioner contends that his alleged incompetence rendered both his guilty plea and his

3

waiver of constitutional rights involuntary and unconstitutional. Prior to his guilty plea, Petitioner was sent to Dorethea Dix Hospital from January 5, 1996 to February 12, 1996 for a competency evaluation. Following such evaluation, Dr. Nicole Wolfe reported that Petitioner was competent to proceed to trial, that he understood the charges against him and that he was capable of working with an attorney in the preparation of a defense. Furthermore and significantly, Dr. Wolfe stated that Petitioner did not suffer from a severe mental disease or defect which prevented him from understanding the difference between right and wrong at the time of the alleged offense. Dr. Wolfe's competency determination, however, was contingent on Petitioner's taking his medications as prescribed. During the guilty plea proceeding on March 4, 1996, Petitioner told Judge Ferrell that he suffered from depression and that he had not taken his anti-depression medicine Prozac for "about two weeks now."[1] (Plea Transcript at 11.) With this fact in his mind, Judge Ferrell then conducted a thorough plea colloquy during which he was able to listen to Petitioner's responses and observe his demeanor. In fact, when the court became aware that Petitioner had not taken his Prozac, Judge Ferrell engaged Petitioner in a lengthy dialogue;

> THE COURT: What does that medication do for you?
> DEFENDANT: Well, the Prozac was a type of medication that supposed to alter my mood. And so it messed up my system in a way. I mean, it – and when I – when they– I didn't know this until the day I left. I was having complications with my stomach, and next thing I know, I was back here. They did blood work on me, and I've been having problems ever since. That's the reason why I got off it – I mean, the Prozac.
> THE COURT: Okay. So that was upsetting your stomach and

---

[1] Interestingly, as noted by the North Carolina Court of Appeals, while much is made about the fact that Petitioner stopped taking his Prozac prior to entering his guilty plea, no evidence was presented during the several hearings regarding Petitioner's plea, indicating that Petitioner's failure to take his Prozac, one of several medications which had been prescribed to him, would result in his plea being unknowing or involuntary.

4

| | |
|---|---|
| DEFENDANT: | Yes, it would cause me a lot of other complications, too, but I'd rather not discuss it before the Court. I mean before – you know. |
| THE COURT: | I understand. But you say now it's been about a week since you've taken Prozac? |
| DEFENDANT: | Yeah. Well, it's been a little over a week. It's been about two weeks now. |
| THE COURT: | How are you doing now with respect to your stomach and the other problems you don't want to talk about? |
| DEFENDANT: | Well, Your Honor, in my opinion is this. I would like to – I mean, if – you know, to get this done and over with as soon as possible. |
| THE COURT: | I understand, but I'm talking about your condition now. |
| DEFENDANT: | Oh, yeah, my condition. Oh, it's – I mean, it's still going to change the way I feel on the inside. I mean – I mean– you know, I mean – I mean, like – like the doctor told me that I should – I mean, that it just changes – I mean, it supposed to make you more like amphetamine, supposed to perk you up. That's the type of medication this was. |

(Transcript of Plea 10-11.)

The Court went on:

| | |
|---|---|
| THE COURT: | So the medications that you've been taking, some of the purpose of that medication, also, is to – first is to take it to sedate you and not – so you don't have seizures. That's one of the purposes? |
| DEFENDANT: | Yes, it is. |
| THE COURT: | Does it affect your mental capacity in such a way that you do not know what you're doing or why you're doing it? |
| DEFENDANT: | I don't know. No, I don't – I don't think so. But like I said, I've – when I was there, they switched me on so much medication, you know. It doesn't – it doesn't – no, it don't. No it don't. |
| THE COURT: | Now, one of the opinions made in the evaluation of you while you were at Dorothea Dix Hospital says that, "Mr. Leon Ager is currently capable of proceeding to trial. He understands the charges against him, his own position relative to the proceedings and is capable of working with an attorney in the preparation of a defense. Mr. Ager's depressive symptoms have lessened considerably with medications and no longer interferes with his ability to make a rational decision." Do you agree with that opinion? |
| DEFENDANT: | Yes, I do. Yes. |
| THE COURT: | So then, prior to your taking medication, you say that you may have |

5

| | |
|---|---|
| | had some difficulty with depression? |
| DEFENDANT: | Well, Your Honor, it's – it's – I probably have, you know. I mean, when you go back to a lot of other things due to – to make a person depressed. But that – that still doesn't justify for the crime that I committed. So that – therefore, I – like I said, Your Honor, I'm just ready to get this over with as soon as possible so it won't be no more trauma – I mean, on her kids, especially, and my kids. I think that – I think that death is the onliest way. And I'm saying this from my heart. |
| THE COURT: | So that – actually, then, the medication you've been taking – |
| DEFENDANT: | Yes. |
| THE COURT: | – really, what that's done is improve your ability to make a rational or a decision in an understanding way. |
| DEFENDANT: | Well, Your Honor, my – my decision always have been there – and even though the medication – like I told the doctors, the medication doesn't change a person's thinking and they mood or feelings. And she – and she – and she told me, "Well, we – we are not trying to do that. Onliest thing we're trying to do is get you out of a depressed stage". You know, if you think every day of things that you do in life that necessarily doesn't agree with how you feel, then sometimes you get depressed. So that's just the way I feel. You know, I feel depressed at times. You know that's just a part of everyday living. So, you know, I got to go with what I feel. |
| THE COURT: | Well, I'm going to tell you another reason I'm asking you these questions, Mr. Agr, is that I want to make suer that you understand what you're doing |
| DEFENDANT: | Yes, sir. |
| THE COURT: | and why you're doing it because I don't want you to plead guilty today and then a year from now or two years from now when you're in the Department of Corrections, write back a letter saying, "Well, I didn't know what I was doing that day. I've been taking medicine. I wasn't able to talk to my lawyers sufficiently". |
| DEFENDANT: | Yes, I understand. |
| THE COURT: | You understand why I'm asking you – |
| DEFENDANT: | Yes, I understand all that. |
| THE COURT: | Because I want to know that what you're doing is that you want to do and it's not affected by medication in such a way – |
| DEFENDANT: | Yes. |
| THE COURT: | – that you're not able to understand what you're doing. |
| DEFENDANT: | Yes, I understand. I comprehend everything, and I realize what the situation is and have made up my mind. I mean, for over probably a period of a month and a half, I've – my attorney Farfour – I've also |

6

> told my attorney, Mr. Coleman and Les Farfour, that I think this is the best way and the onliest way justice can be served.

(Transcript of Plea 13-16.) As evidenced by portions of the plea transcript cited above, Judge Ferrell engaged in an extended dialogue with Petitioner. It was more in depth that the typical plea colloquy and Petitioner's answer's to Judge Ferrell's questions were coherent and responsive to the questions.

At the conclusion of the plea proceeding, at which Petitioner was represented by counsel, Judge Ferrell found that there was a factual basis for the plea, that Petitioner was satisfied with his lawyer, that he was competent to stand trial and that the plea was an informed choice made freely, voluntarily and understandingly. (See copy of printed transcript of plea form and order attached and copy of transcript of plea proceeding.)

A defendant is bound by what he said at the time of his guilty plea, absent clear and convincing evidence to the contrary. Further, a defendant's answers under oath to inquiries as to whether he fully discussed the case with counsel and whether the plea was induced by promises or threats cannot be disregarded as inconsequential procedural dialogue. Little v. Allsbrook, 731 F,2d 238 (4th Cir. 1984). The Supreme Court explained in Blackledge v. Allison, 431 U.S. 63 (1977), that "representations of the defendant, his lawyer, and the prosecutor at such a [guilty plea] hearing as well as any findings made by the judge accepting the plea constitute a formidable barrier in subsequent collateral proceedings."

There is nothing of record, nor included in Petitioner's federal habeas application, sufficient to breach the formidable barrier of Blackledge. Furthermore, Petitioner's knowing, voluntary, counseled plea, as evidenced by the transcript of the plea hearing, is itself constitutionally sufficient to support his conviction. See Boykin v. Alabama, 395 U.S. 238 (1969)(articulating the

requirements for a valid guilty plea).

Moreover, Judge Ferrell's findings of fact contained in the printed transcript of plea form and order, that there was a factual basis for the plea, that Petitioner was satisfied with his lawyer, and that Petitioner was competent to enter his plea, are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). The Petitioner has the burden of rebutting this presumption by "clear and convincing evidence" which he has not done. Furthermore, Judge Ferrell's mixed findings of fact and conclusions of law that Petitioner's guilty plea was an informed choice made freely, voluntarily and understandingly are correct. They are not contrary to, nor involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States (i.e. Boykin v. Alabama, 395 U.S. 238 (1969) (requirements for a valid guilty plea). See 28 U. S.C. § 2254(d)(1).

Twenty months after Petitioner plead guilty, he filed a motion to withdraw his guilty plea on November 26, 1997. After an evidentiary hearing on January 16, 1998, Judge Payne entered detailed findings of fact and conclusions of law and denied Petitioner's motion to withdraw his plea on April 22, 1998. (See Judge Payne's Order, attached to Respondent's Motion for Summary Judgment.)

On July 1, 1999 Petitioner filed a motion for appropriate relief which Judge Bridges construed as a motion to reconsider the motion to withdraw the guilty plea. After a second evidentiary hearing on October 7-8, 1999, at which Petitioner's counsel submitted additional medical evidence supporting Petitioner's motion to withdraw, Judge Bridges entered detailed findings of fact and conclusions of law and denied Petitioner's motion on October 15, 1999 (See Judge Bridges" Prder, attached to Respondent's Motion for Summary Judgment.)

On appeal Petitioner sought review of Judge Payne's and Judge Bridges' orders and

Petitioner raised the substance of his current federal habeas contention, albeit in terms of alleging a "fair and just" reason for withdrawing his guilty plea. The North Carolina Court of Appeals adjudicated and denied the substance of Petitioner's current contention on the merits. The North Carolina Court of Appeals' opinion contains a thorough, lengthy analysis of all pertinent issues raised the instant petition, including a detailed analysis and rejection of Petitioner's current mental incompetency claim. The Court concluded its several page analysis of Petitioner's mental incompetence claim by stating;

> In sum, we hold that defendant failed to meet his burden of showing that there existed a fair and just reason to allow him to withdraw his guilty plea. Accordingly, we affirm Judge Payne's order denying defendant's motion to withdraw his guilty plea. In light of our holding in this regard, we deny defendant's petition for writ of certiorari in which he recapitulates his entitlement to relief from his guilty plea. See State v. Grundler and State v. Jelly, 251 N.C. 177, 189, 111 S.E. 2d 1, 9 (1959) (providing that the writ of certiorari is a discretionary writ to be granted only upon a showing of "good and sufficient cause'" and that "the petition for the writ must show merit or that error was probably committed below[]"), cert. Denied, 362 U.S. 917, 4 L.Ed. 2d 738, 80 S. Ct. 670 (1960). Judgment affirmed; petition for certiorari denied.

State v. Ager, 152 N.C. App at 585.

The state court adjudication, as well as Judge Payne's and Judge Bridges' underlying adjudications of the substance of Petitioner's current contention, were correct and did not result in a decision contrary to, or involve an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). There is no United States Supreme Court case which mandates that Petitioner's guilty plea be set aside or withdrawn under the circumstances of this case. Moreover, the state court adjudications are not based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(2).

Furthermore, Judge Ferrell's March 4, 1996 findings of fact contained in the printed

transcript of plea form and order, Judge Payne's April 22, 1998 order, Judge Bridges' October 15, 1999 order, the September 3, 2002 opinion of the North Carolina Court of Appeals as affirmed by the May 2, 2003 order of the Supreme Court of North Carolina, are all presumed correct on federal habeas review. See Townsend v. Sain, 373 U.S. 293 (1963) (even absent express findings of fact, implicit findings presumed correct), overruled on other grounds by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992). In the instant case, Petitioner had the benefit of two evidentiary hearings in which witnesses presented testimony which was witnessed by the presiding judge of each hearing. A federal habeas court has no authority to redetermine the credibility of the witnesses presented at a state evidentiary hearing, who were observed by the state court but not by the federal court. Marshall v. Loneberger, 459 U.S. 422 (1983) ("Title 28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").

For all of the reasons stated above, Petitioner's contention that his alleged incompetence rendered both his guilty plea and his waiver of constitutional rights involuntary and unconstitutional is denied.

### 2. Ineffective Assistance of Counsel

Next, Petitioner claims his counsel's conduct before and at the time of the guilty plea was ineffective because counsel failed to investigate, discover and present critical facts relevant to Petitioner's lack of capacity to proceed.

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent that it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S.

687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Id</u>. at 689; <u>see also</u> <u>Fields v. Attorney Gen. Of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir.), <u>cert. denied</u>, 474 U.S. 865 (1985); <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065 (1984); and <u>Marzullo v. Maryland</u>, 561 F.2d 540 (4th Cir. 1977), <u>cert. denied</u>, 435 U.S. 1011 (1978).

Under these circumstances, the petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297, <u>citing</u> <u>Hutchins</u>, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u>, <u>Strickland</u>, 466 U.S. at 697.

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome would have been different. <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998), <u>cert. denied</u>, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under ... <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'" <u>Id</u>., <u>quoting</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364 U.S. 364, 369 (1993).

Petitioner has not established that his counsel was ineffective. His allegations are unsupported and conclusory. The transcript of plea form and the transcript of the guilty plea proceeding belie any claim of coercion, lack of adequate investigation or failure to properly advise Petitioner of his rights regarding the plea. Instead, the plea proceeding demonstrates Petitioner was satisfied with his lawyer, received the benefit of his plea bargain and shows no reasonable probability that absent the alleged errors, an objectively reasonable person in Petitioner's shoes would have refused the plea and insisted on going to trial. Thus Petitioner's ineffectiveness claim is without

11

merit under Hill v. Lockhart.

Additionally, Petitioner presented the substance of his current ineffectiveness claim to the North Carolina Court of Appeals. The Court of Appeals adjudicated and denied the claim on its merits as follows;

> Fourth, we wholly reject defendant's claim of ineffective assistance of counsel. On this record, the defendant cannot satisfy the two-part test set froth in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, reh'g denied, 467 U.S. 1267, 82 L. Ed. 2d 864, 104 S. Ct. 562 (1984), and adopted by this state in State v. Braswell, 312 N.C. 553, 324 S.E. 2d 241 (1985). Indeed the evidence tends to show that counsel immediately went to work on defendants's case upon appointment, made numerous filing to obtain expert evaluation of defendant's competency, and fought and won a battle to save defendant's life, despite defendant's wish to die. The only evidence not uncovered by counsel prior to the entry of defendant's plea was the evidence of defendant's treatment by speech pathologist Shannon McCool at Cleveland Regional Medical Center for speech impairment and short-term memory difficulties he suffered after a October 1995 car accident. Based on the present evidence, we simply cannot say that defendant has shown that "but for counsel's errors, he would have pleaded guilty and would have insisted on going to trial," so as to be entitled to relief here. See Hill v. Lockhart, 474 U.S. 52, 59, 88 L. Ed. 2d 203, 210, 106 S. Ct. 366 (1985) (noting that to satisfy the "prejudice" prong of the Strickland test in the context of a guilty plea, "the defendant must shown that there is a reasonable probability that, but for counsels, errors, he would not have pleaded guilty and would have insisted on going trial]").

State v. Ager, 152 N.C. App at 582-83.

This state court adjudication and denial of Petitioner's ineffectiveness claim on its merits, is a correct and reasonable application of the law. It is not contrary to Strickland and Hill and it is not an unreasonable application of Strickland and Hill to the facts of this case. Therefore, Petitioner's claim of ineffectiveness is also denied pursuant to § 2254(d) and (e). See Williams v. Taylor, 529 U.S. 362, 409-412 (2000).

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is <u>Denied</u> and <u>Dismissed</u> and the State's Motion for Summary Judgment is <u>Granted</u>.

**SO ORDERED**.

Signed: July 17, 2006

Graham C. Mullen
United States District Judge